UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JULIE DUDUM, et al.,

    Plaintiffs,

v.

CARTER'S RETAIL, INC.,

    Defendant.

Case No. 14-cv-00988-HSG

**ORDER GRANTING PRELIMINARY APPROVAL**

Re: Dkt. No. 25

    Pending before the Court is Plaintiffs' second motion for preliminary approval and for certification of the putative settlement class. Dkt. No. 25. After careful consideration of the settlement agreement and the parties' arguments, the Court GRANTS Plaintiffs' motion for preliminary approval.

## I. FACTUAL BACKGROUND

### A. Litigation History

    On January 27, 2014, Plaintiffs Julie Dudum, Estella Garcia, Luningning Ludovico, Lakisha Powell, and Columba Gutierrez filed a lawsuit against Defendant Carter's Retail, Inc. in the Superior Court for the County of San Mateo. Plaintiffs alleged violations of California Labor Code and Business and Professions Code, including the failure to pay wages, failure to pay split shift differential wages, failure to reimburse business expenses, failure to provide accurate wage statements, violations of California's Unfair Competition Law, and claims under the Private Attorney General Act ("PAGA"). Plaintiff Dudum also brought individual claims for retaliation, disability discrimination, and wrongful termination.[1] Defendant removed the action to this Court on March 3, 2014.

---

[1] Per the terms of the proposed settlement, Plaintiff Dudum's individual claims are subject to a separate settlement agreement. Dkt. No. 21-2 at 12.

After exchanging some discovery, the parties participated in a full-day mediation before an experienced class action mediator on October 22, 2014. The parties continued to work with the mediator in the months following the mediation until a settlement was reached on January 15, 2015. The terms of the formal settlement agreement were finalized on July 7, 2015. Plaintiffs filed a motion for preliminary approval of the settlement on July 24, 2015. Dkt. No. 21. On September 4, 2015, this Court denied Plaintiffs' motion without prejudice identifying four primary concerns with the settlement. Dkt. No. 24. Pending before the Court is Plaintiffs' renewed motion for preliminary approval of settlement. Dkt. No. 25.

### B. Overview of the Proposed Agreement

The parties Joint Stipulation of Settlement and Release ("Settlement Agreement") provides the following key provisions. Dkt. No. 21-2.

Payment Terms. In full settlement of the claims asserted in this lawsuit, Defendant agrees to pay $472,500 as the maximum settlement amount. Dkt. No. 21-2 at 10. This amount includes payments to class members for release of their claims, any award of attorneys' fees and costs, the Claims Administrator's costs, a $4,000 payment to cover PAGA penalties, and any incentive award to the named Plaintiffs. *Id.* at 10-11. Plaintiffs' counsel estimates that $274,500 will be available for disbursement to the class after these amounts are deducted from the total recovery. *Id.* at 11.

The Settlement Agreement provides that the disbursable settlement amount will be allocated to class members based on two factors. First, "an amount equal or greater than the amount of wages that Defendant might determine through further analysis of payroll data could be owed to each Class Member based on Plaintiffs' regular rate theory shall be calculated." *Id.* at 12. This is referred to as the Regular Rate Payment; it is an all-in settlement with direct distribution to all class members who do not opt-out. *Id.* at 13. Second, once all Regular Rate Payments are calculated, the remainder of the disbursable settlement amount will be allocated to class members based on their proportional share of pay periods worked during the class period. *Id.* at 12. This is referred to as the Pro Rata Payment and requires a class member to file a claim form.

Attorneys' Fees and Costs. The Settlement Agreement authorizes class counsel to apply to

1  the Court for an award of attorneys' fees and costs incurred in litigating this case, not to exceed
2  one-third of the total settlement amount, or $157,500.  Dkt. No. 21-2 at 10.

<u>Incentive Payment</u>.  The Settlement Agreement authorizes the five named Plaintiffs to seek $5,000 in incentive payments (for a total of $25,000) for their participation in this lawsuit.  *Id.* at 10-11.

<u>Releases</u>.  The Settlement Agreement provides that all class members other than those who opt-out shall release Defendant from:

> All claims and causes of action alleged in the Complaint on file in this Action, with the sole exclusion of individual claims made by Plaintiff Julie Dudum (i.e., the Ninth through Eleventh Causes of Action in the Instant Action). The Class Member Released Claims include claims for failure to pay all wages (Labor Code §§ 201, 202, 203, 204, 210, 510 and 1194); failure to provide meal periods or compensation in lieu thereof (Labor Code §§ 226.7 and 512; IWC Wage Order 4-2001); failure to pay split shift differential wages; failure to reimburse business expenses; failure to provide accurate wage statements (Labor Code § 226); penalties pursuant to Labor Code § 558; violation of Business and Professions Code § 17200 (derivative of the Labor Code claims asserted in the Complaint); and penalties pursuant to Labor Code § 2699(f) for violations of Labor Code §§ 201, 202, 203, 204, 210, 226.7, 432, 510, 512, 558, 1194, and 2699(f)(2).

*Id.* at 2.  The time period for this release is January 27, 2010 through and including January 15, 2015.  *Id.*

## II.   CONDITIONAL CLASS CERTIFICATION

Class certification under Rule 23 is a two-step process.  First, a plaintiff must demonstrate that the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy.  "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied."  *Wang v. Chinese Daily News, Inc.*, 709 F.3d 829, 833 (9th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)).  Second, a plaintiff must establish that one of the bases for certification in Rule 23(b) is met.  Here, by invoking Rule 23(b)(3), Plaintiffs must establish that "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The party seeking class certification bears the burden of

3

demonstrating by a preponderance of the evidence that all four requirements of Rule 23(a) and at least one of the three requirements under Rule 23(b) are met. *See Wal-Mart*, 131 S. Ct. at 2551.

### A.     Rule 23(a)(1) - Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Here, the proposed class members are readily identifiable from Defendant's payroll records. The settlement class is approximately 446 members and joinder of each class member would be impracticable. Thus, the numerosity requirement is satisfied.

### B.     Rule 23(a)(2) - Commonality

A Rule 23 class is certifiable only if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Under Rule 23(a)(2), even a single common question is sufficient. *Wal–Mart*, 131 S.Ct. at 2556. The question, however, "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2551. "What matters . . . is . . . the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (citation omitted).

The proposed class satisfies the commonality requirement. The named Plaintiffs are all current and former non-exempt employees. Like the class members, Plaintiffs were affected by Defendant's alleged policies and practices concerning the failure to include earned bonuses in the overtime wage calculations. These facts and the underlying legal issues implicate the class members' claims as a whole and are capable of classwide resolution.

### C.     Rule 23(a)(3) - Typicality

Courts must find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (internal quotation marks omitted).

Here, the five named Plaintiffs are typical of the class they seek to represent. Like the members of the settlement class, the Plaintiffs worked overtime and received at least one bonus during the class period; the Plaintiffs and the class were affected by the same employment policy of failing to calculate the regular overtime rate. This satisfies the typicality requirement. *See Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 633 (S.D. Cal. 2010).

### D. Rule 23(a)(4) - Adequacy of representation

"The adequacy of representation requirement . . . requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). The requirement "'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982)). Among other purposes, these requirements determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 158 n.13. Adequacy of representation requires two legal determinations: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)

There is no evidence to suggest that the class representatives or counsel have a conflict of interest with other class members. Plaintiffs' attorneys have substantial expertise—almost four decades of collective litigation experience—prosecuting employment class actions. *See* McIntyre Decl. ¶ 47. Named Plaintiffs spent a considerable amount of time gathering, organizing, and reviewing documents for the lawsuit; they reviewed their own documents and the papers produced through discovery; they also participated through in-person and telephonic meetings. *See id.* at ¶¶ 38-41. The Court finds that proposed class counsel and named Plaintiffs have prosecuted this action vigorously on behalf of the class. The adequacy requirement is therefore satisfied.

### E. Rule 23(b)(3) - Predominance and Superiority

To certify a Rule 23 damages class, the Court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (citation omitted).

Here, the common questions raised by Plaintiffs' claims predominate over questions affecting only individual members of the proposed class. To be certain, there are a number of individual questions—whether an employee worked overtime, how much overtime, whether an employee earned a bonus during the same period as the overtime, and whether Defendant has already paid the individual employee sufficient wages for that period. But, these individual questions are primarily relevant to the measure of damages; the factual predicates and allegations underlying those damages still predominate as a whole. *See Dilts*, 267 F.R.D. at 635 ("[I]ndividualized questions going to damages do not preclude a finding that common questions predominate."); *Backhaut v. Apple Inc.*, No. 14-CV-02285-LHK, 2015 WL 4776427, at *13 (N.D. Cal. Aug. 13, 2015) ("[T]he inquiry is a holistic one."); *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 473 (E.D. Cal. 2009) (finding predominance, despite factual differences among class members, where case involved "alleged policies that required class members to work without compensation, meal and rest periods, and/or reimbursement for expenses"); *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1065-68 (N.D. Cal. 2007) (finding predominance where, as a general matter, defendant's policy regarding compensation and exemption was uniform for putative class members). Because Defendant's failure to pay overtime wages is common to all class members, the predominance requirement is satisfied.

Next, "[t]he superiority inquiry under Rule 23(b)(3) requires the Court to determine

6

whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. "This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Id*. Like in *Hanlon*, the alternative method here would require individual resolution of each member's claims. But given the small value of each claim, it would be uneconomical for members to bring individual lawsuits. Taking into account the size of the proposed class and the low incentive to file individual lawsuits, the Court finds that the judicial economy achieved through common adjudication makes a class action a superior method for adjudicating the class's claims.

Finally, while not enumerated in Rule 23, "courts have recognized that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *Vietnam Veterans of Am. v. C.I.A.*, 288 F.R.D. 192, 211 (N.D. Cal. 2012) (internal quotation marks omitted); *see also Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1071 n.3 (9th Cir. 2014) (referring, in dicta, to the "threshold ascertainability test"). "[A] class definition is sufficient if the description of the class is definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *Vietnam Veterans*, 288 F.R.D. at 211 (internal quotation marks omitted).

Courts have considered at least three types of "ascertainability" concerns when determining whether class certification is appropriate: (1) whether the class can be ascertained by reference to objective criteria; (2) whether the class includes members who are not entitled to recovery; and (3) whether the putative named plaintiff can show that he will be able to locate absent class members once a class is certified. *See Lilly v. Jamba Juice Co.*, 2014 WL 4652283, at *3-4 (N.D. Cal. Sept. 18, 2014). The proposed class in this case does not present any of these concerns. The putative class has been narrowed to only Defendant's current and former hourly employees who worked from January 27, 2010 to January 15, 2015 and who both received at least one bonus payment and worked overtime during that time. Dkt. No. 21, Ex. 1. Moreover, Defendant has the names, last known addresses and telephone numbers, social security number, dates of employment, and qualifying pay periods (the number of weeks during the class period in which the individual worked) for each class member. *Id.* The Claims Administrator will run the

list of class members through the National Change of Address Database and will use the most recent address for each class member when mailing the class notice; for any notices that are returned as undeliverable, the Claims Administrator will take reasonable steps to locate the Class Member. *Id.* This satisfies the ascertainability requirement.

**F.     Appointment of Class Representatives and Class Counsel**

Because the Court finds that Plaintiffs meet the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints them as class representatives. When a court certifies a class, the court must appoint class counsel and must consider:

> (i)    the work counsel has done in identifying or investigating potential claims in the action;
> (ii)   counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii)  counsel's knowledge of the applicable law; and
> (iv)   the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). Additionally, a court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Plaintiffs' attorneys have prosecuted this action by: (1) investigating class members' potential claims; (2) propounding and reviewing six sets of written discovery totaling over 2,000 pages; (3) analyzing payroll data for the putative class members; (4) participating in a full-day mediation and follow-up discussions over almost three months; (5) negotiating this Settlement Agreement; and (6) briefing the first motion for preliminary approval as well as the instant motion for renewed preliminary approval. The attorneys have substantial prior experience litigating class actions, and wage and hour employment matters, specifically. *See* Dkt. Nos. 21-1, 21-3. For these reasons, the Court appoints John McIntyre of Shea & McIntyre, A.P.C. and Cary Kletter of Kletter Law Firm, LLP, as co-lead class counsel under Federal Rule of Civil Procedure 23(g).

**III.    PRELIMINARY APPROVAL**

Under Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." The Ninth Circuit has a "strong judicial policy" that favors the settlement of class

actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Thus, before a court approves a settlement it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008).

In general, the district court's review of a class action settlement is "extremely limited." *Hanlon*, 150 F.3d at 1026. But, where parties reach a settlement before class certification, courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (citation and internal quotations omitted). Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

The Court may preliminarily approve a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *see also Alvarado v. Nederend*, No. 08-cv-01099 OWW DLB, 2011 WL 90228, at *5 (E.D. Cal. Jan. 11, 2011) (granting preliminary approval of settlement in wage and hour class action). The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with a plaintiff's fiduciary obligations to the class. *Hanlon*, 150 F.3d at 1027. The Court considers the settlement as a whole, rather than its components, and lacks the authority to "delete, modify or substitute certain provisions." *Id.* (internal quotation marks omitted). "The settlement must stand or fall in its entirety." *Id.*

A. **The Settlement Process**

First, the Court examines the means by which the parties arrived at the settlement. "An initial presumption of fairness is usually involved if the settlement is recommended by class

counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. 08–cv–5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (citation omitted).

Here, the parties reached their settlement after working with a mediator for almost three months. The parties engaged in six separate sets of written discovery; Defendant produced over 2,000 pages of records related to payroll and time-keeping practices, hours worked, and mileage reimbursements. Defendant also produced the named Plaintiffs' employee files including time sheets, personnel files, and records related to their hire, termination, attendance, leaves of absence, and payroll. *See* McIntyre Decl. ¶ 14. That settlement was reached after discovery and after multiple discussions with the mediator strongly suggests the absence of collusion or bad faith. *See Chun–Hoon v. McKee Foods Corp*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010); *see also Satchell v. Fed. Exp. Corp.*, No. 03–cv–2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

### B. Obvious deficiencies

The Court next considers whether there are any obvious deficiencies with the settlement.

#### i. Settlement Amount

The Court denied the parties' first preliminary approval motion, in part, because Plaintiffs did not provide the results of their damage analysis, which prevented the Court from evaluating whether $472,500 sufficiently compensated the class members given the strengths and weaknesses of the case. In their renewed motion, Plaintiffs have largely remedied the problem. They have explained that although Plaintiffs alleged seven bases for the underlying wage and hour violations, the settlement amount only accounts for Defendant's alleged failure to pay overtime wages. Relying on written discovery from Defendant—including signed voluntary meal period wavier forms, attendance records, and payroll files showing hours worked, hourly wage rates, gratuitous bonuses, and net pay—Plaintiffs concluded it would be difficult to prove facts underlying the other wage and hour allegations. *See* McIntyre Decl. ¶ 29. *See also Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) ("[T]he fairness and the adequacy of the settlement should be assessed relative to risks of pursuing

10

the litigation to judgment.").

Of the files produced, however, the payroll records strongly supported the argument that Defendant had failed to incorporate bonuses in an employee's regular rate of pay for purposes of calculating overtime wages. Plaintiffs thus focused on this cause of action. Defendant produced further documents related to the bonus and incentive programs that applied to the named Plaintiffs and putative class members during the class period. The parties examined class-wide payroll records to identify those employees who both earned bonus compensation and worked overtime during the class period. Of over 5,000 individuals employed by Defendant during the class period, Plaintiffs identified 466 class members who were harmed.

To determine the settlement amount, Plaintiffs examined Defendant's payroll records to assess whether a class member's bonus compensation was non-discretionary (and thus needed to be included in the regular rate calculation) and whether the bonus compensation was coded properly in Defendant's record such that the member's overtime wages were in fact correctly calculated. The damages analysis also accounted for when the bonus was earned and any delay from the date in which it should have been paid. The parties arrived at a settlement amount of $472,500, which (according to counsel's representations) is seven and half times greater than the maximum aggregate wage underpayment allegedly suffered by the putative class members.

Based on this explanation, the Court finds that there are no obvious deficiencies as to the settlement amount.

### ii.     Attorneys' Fees

The Court denied the first motion for preliminary approval, in part, because Plaintiffs' counsels sought one-third of the settlement amount as attorneys' fees, without any justification to support a fees award at the maximum end of the appropriate range.

In its renewed motion for preliminary approval, Plaintiffs clarified that the request of up to $157,500, or 33 percent of the settlement amount, included costs totaling $11,000. When the costs are subtracted from the requested attorneys' fees, the attorneys' award is approximately 31 percent of the settlement. Class counsels state they have worked over 276 hours on the case and expect to work an additional 30 hours in obtaining preliminary and final approval of the settlement,

11

responding to communications from class members, monitoring claims administration, assisting with outreach to the class, and responding to objectors. Dkt. No. 25-1. At the final fairness hearing, the Court will hear further evidence necessary to evaluate the reasonableness of the attorneys' fees request. *See e.g.*, *Rubio-Delgado v. Aerotek, Inc.*, No. 13-CV-03105-SC, 2015 WL 3623627, at *8 (N.D. Cal. June 10, 2015) (although approving attorneys' fees in the preliminary award, court warned that upon a motion for attorneys' fees the court would likely require additional evidence to show reasonableness of the fees given the $6.08 settlement per class member and $1,315,625 estimate for attorneys' fees).

### iii. Reversion

In its denial of the first motion for preliminary approval, the Court also noted concerns with the reversion of unclaimed settlements funds to Defendant. "[S]ettlement agreements containing reversionary clauses often raise concerns about whether the settlement is in the best interests of the class." *Minor v. FedEx Office & Print Servs., Inc.*, No. C09-1375 TEH, 2013 WL 503268, at *4-5 (N.D. Cal. Feb. 8, 2013).

The parties contend that unlike cases where reversion may be inappropriate, here, the reversion is fair because "each Class Member will recover one hundred percent of the damages he or she has suffered under Plaintiffs' regular rate theory, irrespective of any potential reversion." Dkt. No. 25-1 at 11. The parties further explain that the reversion is reasonable because (1) the $472,500 settlement amount is seven and a half times greater than the total underpayment allegedly suffered, which is approximately $63,000, (2) after subtracting all fees, costs, and incentive awards, the net settlement amount is $274,500, which is still greater than the total underpayment alleged, and (3) the Settlement Agreement requires that a fifty percent minimum of the net settlement amount, or $137,250, be distributed to the class members, which is again greater than the total underpayment. *Id.* at 11-12. Thus, despite the reversion provision, under the Regular Rate Payment method, class members are guaranteed to receive their unpaid wages.

The parties also explain that the reversion was a necessary part of the compromise. For Plaintiffs, a driving factor in the case was the potential for penalties. A settlement amount greater than the maximum aggregate underpayment allowed the class members to seek penalties by

submitting a claim form; at the same time, the amount acknowledges that had the class moved forward with litigation, they may not have received penalties at the statutory maximum. Similarly, the Defendant's willingness to pay an amount greater than the actual underpayment is also a compromise on penalties. Because the reversion only applies to the penalties, and the class members who do not opt out are guaranteed the maximum wages they were underpaid, the reversionary provision does not render the Settlement Agreement inherently inadequate. *See Minor*, 2013 WL 503268, at *4-5.

Accordingly, the Court concludes there are no obvious deficiencies in the Settlement Agreement.

### C. Preferential Treatment

"Under the third factor, the Court examines whether the Settlement Agreement provides preferential treatment to any class member." *Villegas*, 2012 WL 5878390, at *7. "The district court must evaluate [named plaintiffs'] awards individually, using relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). "Such awards are discretionary. . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). "Such payments, however, must be reasonable in light of applicable circumstances, and not 'unfair' to other class members." *W. v. Circle K Stores, Inc.*, No. CIVS040438WBSGGH, 2006 WL 1652598, at *12 (E.D. Cal. June 13, 2006); *see In re Oracle Secs. Litig.*, No. C-90-0931-VRW, 1994 WL 502054 at *1 (N.D. Cal. June 18, 1994) (reducing requested payment of $2,500 to $500 for spending "between two and five hours undergoing depositions and . . . respond[ing] to a few narrow document discovery requests").

The Court also denied the initial motion for preliminary approval because there was no explanation for why the named plaintiffs deserved approximately 10 percent of the disbursable settlement amount on top of the normal distribution available to all class members. In the renewed

motion, Plaintiffs still fail to provide evidence of the number of hours they spent on the case, and there are only generalized descriptions of the personal sacrifices Plaintiffs have made on behalf of the class.

That being said, Plaintiffs have provided further detail as to their active involvement over the course of two years: they initiated the lawsuit, provided foundational information about Defendant's policies and factual circumstances underlying the claims, located witnesses, examined their own documents and provided documentary evidence, assisted counsel in responding to written discovery demands, discussed case strategy, reviewed documents that Defendant produced, and participated in in-person and telephonic meetings. Dkt. No. 25-1. *See* McIntyre Decl. ¶¶ 37-41. Although the Court reserves its determination until the final motion for approval, at this stage, given Plaintiffs' involvement and the fact that $5,000 is presumptively reasonable, the Court finds there is no readily apparent indication of preferential treatment. *See Jacobs v. California State Auto. Ass'n Inter-Ins. Bureau*, No. C 07-00362 MHP, 2009 WL 3562871, at *5 (N.D. Cal. Oct. 27, 2009) (rejecting a requested $25,000 incentive payment as "quite high for this district, in which a $5,000 payment is presumptively reasonable"); *Villegas*, 2012 WL 5878390, at *7.

### D. Range of Possible Approval

Lastly, the Court must consider whether the settlement falls within the range of possible approval. To determine whether a settlement "falls within the range of possible approval," a court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080. Additionally, the Court may preview the factors that ultimately inform final approval: (1) the strength of the Plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. *See Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citation omitted). Although the Court undertakes a more in-depth

investigation of the foregoing factors at the final approval stage, these factors also inform whether the Settlement Agreement falls within the "range of possible approval."

First, the settlement provides for the payment of $472,500, which, based on counsel's representations, is approximately seven and half times greater than the total wage underpayment. Plaintiffs argue that this is a fair compromise within the range of reasonableness given the risks of non-certification, the absence of evidence supporting the other causes of action, and the possibility of dismissal on the merits. *Id*. The Court agrees.

Second, the settlement amount preliminarily appears to be fair and adequate in light of the risks attendant to further litigation. The settlement amount guarantees payment for class members under the Regular Rate Payment and gives members an opportunity to seek penalties that would not have been guaranteed had the parties moved forward with litigation.

The third factor concerning whether class certification can be maintained through trial also weighs in favor of settlement. Certifying a class of almost five hundred employees presents complex issues that could undermine certification at different stages of the litigation.

Fourth, as discussed *supra*, the settlement amount is reasonable given that it is seven and half times greater than the maximum aggregate wage underpayment suffered by the putative class.

Fifth, the parties undertook sufficient discovery to inform their view of the reasonableness of the Settlement Agreement.

The sixth factor takes into account counsel's experience and their respective views of the Settlement Agreement. The Court notes that courts have taken divergent views as to the weight to accord counsel's opinions. *Compare Carter v. Anderson Merch., LP*, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight."), *with Chun-Hoon*, 716 F. Supp. 2d at 852 ("[T]his court is reluctant to put much stock in counsel's pronouncements, as parties to class actions and their counsel often have pecuniary interests in seeing the settlement approved."). The Court finds that this factor tilts in favor of approval given its evaluation of counsels' experience and respective views of the Settlement Agreement, even though the Court affords only modest weight to the views of counsel.

The seventh factor is inapplicable because there is no governmental participant in this case.

Eighth, because the class has not yet been formally notified of the settlement, the Court cannot undertake any evaluation of class members' reaction to the settlement, including the number and substance of any objections.

Having weighed these eight factors, the Court finds that the Settlement Agreement falls within the range appropriate for preliminary approval.

## IV.   CLASS NOTICE

The class notice in a Rule 23(b)(3) class action must comport with the requirements of due process. "The plaintiff must receive notice plus an opportunity to be heard and participate in litigation, whether in person or through counsel." *Philips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). The notice must be "the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id*. (internal quotation marks omitted). "The notice should describe the action and the plaintiffs' rights in it." *Id*. Rule 23(c)(2)(B) provides, in relevant part:

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Additionally, "an absent plaintiff [must] be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court." *Philips Petroleum Co.*, 472 U.S. at 812.

Plaintiffs propose Simpluris, Inc. ("Simpluris") as the settlement administrator for the Class. Dkt. No. 21-2 at 16. Simpluris will send class members the class notice and claim form via United States First Class Mail following the Court's preliminary approval order. *Id.* at 17.

Additionally, the Court finds that the notice satisfies all of the requirements of Rule 23(c)(2)(B), but directs counsel to address the following deficiencies:

- On page 2, under "Summary of Your Legal Rights and Options in this Settlement,"

16

- in the "Return the Claim Form" section, it states "below the box marked 'Estimated Maximum Settlement Payment.'" The box, however, on page 3 is titled "Estimated Total Settlement Payment." The titles need to be consistent.
- On page 2, under "Summary of Your Legal Rights and Options in this Settlement," in the "Do Nothing" section, it states the box marked "Estimated Regular Rate Settlement Payment," whereas on the next page it states "Estimated Regular Rate Payment." Again, the titles need to be consistent.
- On page 2, under "Summary of Your Legal Rights and Options in this Settlement," in the "Object" section, change "You may object to the Settlement by writing to the Court . . ." to read: "You may object to the Settlement by writing to the Settlement Administrator. . ."
- On page 3, inform class members that the settlement amount to be paid encompasses only Defendant's alleged failure to pay accurate overtime wages and does not include the list of allegations at the bottom of page 2.
- On page 4, inform class members *where* they can access the Exclusion Request Form.

Additionally, the Court directs the following changes be made to the claim form:

- Under the "Release of Claims" section, place the letters outlining the released claims in alphabetical order.
- Add the Claims Administrator's address on the claim form.

## V.     NOTICE OF MOTION AND AWARD OF ATTORNEYS' FEES AND COSTS

The settlement notices inform class members that class counsel will ask the Court to award attorneys' fees and expenses of up to $157,000 and to award a $5,000 service award for each of the five class representatives in the case. To enable class members to review class counsel's motion, class counsel shall include language in the settlement notices indicating the deadline for filing the attorneys' fees motion, specifically stating the deadline for any class member objections to the fees motion, and informing class members that the motion and supporting materials will be available for viewing by request from the Claim Administrator or Class Counsel. *See In re*

*Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-94 (9th Cir. 2010) (holding that under Rule 23(h), class members must be given a full and fair opportunity to examine and object to attorneys' fees motion). That motion shall be filed with the Court and posted on the settlement website not later than 20 days before Class Members' objections are due.

## VI. CONCLUSION

For the reasons stated, the Court grants Plaintiffs' motion for preliminary approval of class action settlement, and conditionally certifies the class for settlement purposes. The Court also approves the proposed settlement administrator Simpluris, as well as the proposed class representatives, and appoints John McIntyre of Shea & McIntyre, A.P.C. and Cary Kletter of Kletter Law Firm, LLP, as co-lead class counsel.

Within five days of the date of this Order, Plaintiffs shall submit a revised notice and claim form that address the Court's concerns. The revised notices shall include redlined or highlighted copies clearly identifying the modifications.

In addition, the parties are directed to meet and confer and stipulate to a schedule of dates for each event listed below, which shall be submitted to the Court along with a proposed order within ten days of the date of this Order.

| Event | Date |
|---|---|
| Deadline to send notice to Class Members | |
| Filing deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Last date to file objections | |
| Last date to submit claims | |
| Filing deadline for final approval motion | |
| Final fairness hearing and hearing on motions | |

**IT IS SO ORDERED.**

Dated:  3/14/2016

HAYWOOD S. GILLIAM, JR.
United States District Judge