UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE DUDUM, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>CARTER'S RETAIL, INC.,<br><br>　　　　Defendant. | Case No. 14-cv-00988-HSG<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES**<br><br>Re: Dkt. Nos. 35, 38 |

Pending before the Court are two motions filed by Plaintiffs Julie Dudum, Estella Garcia, Luningning Ludovico, Lakisha Powell, and Columba Gutierrez. Plaintiffs move for (1) final approval of the parties' proposed class action settlement, Dkt. No. 38; and (2) an award of attorneys' fees, costs, and named plaintiff incentive payments, Dkt. No. 35. The Court held a final fairness hearing on both motions on July 28, 2016. For the reasons stated below, the Court GRANTS both motions.

**I.	BACKGROUND**

**A.	Litigation History**

Plaintiffs are current and former non-exempt employees of Defendant Carter's Retail, Inc. On January 27, 2014, Plaintiffs filed a lawsuit against Defendant Carter's Retail, Inc. in the Superior Court for the County of San Mateo. Plaintiffs alleged violations of California's Labor Code and Business and Professions Code, including the failure to pay wages, failure to pay split shift differential wages, failure to reimburse business expenses, failure to provide accurate wage statements, violations of California's Unfair Competition Law, and claims under the Private Attorney General Act ("PAGA"). Plaintiff Julie Dudum also brought individual claims for retaliation, disability discrimination, and wrongful termination. Defendant removed the action to

1   the District Court for the Northern District of California on March 3, 2014.

2   After exchanging substantial informal discovery, the parties participated in a full-day
3   mediation before experienced class action mediator Michael Loeb on October 22, 2014. The
4   parties continued to work with Mr. Loeb in the months following the mediation until a settlement
5   was reached on January 15, 2015. The terms of the formal settlement agreement were finalized on
6   July 7, 2015. Plaintiffs filed a motion for preliminary approval of that settlement on July 24,
7   2015, Dkt. No. 21. The Court denied that motion without prejudice. Dkt. No. 24. Plaintiffs then
8   filed a renewed motion on October 25, 2015, Dkt. No. 25, which the Court granted on March 31,
9   2016, Dkt. No. 31.

### B.    Overview of the Proposed Settlement

The parties have submitted a Joint Stipulation of Settlement and Release ("Settlement Agreement") for the Court's review. Dkt. No. 35-2. The key provisions of the Settlement Agreement are as follows.

*Settlement Class*: The Class includes all current and former hourly employees of Defendant who worked in the State of California from January 27, 2010 through and including January 15, 2015, and who (a) received one or more bonus payments during the class period; and (b) worked overtime at any point during the class period. *Id.* at ¶ 7.

*Payment Terms*: In full settlement of the claims asserted, Defendant agrees to pay $472,500. *Id.* at ¶ 55. This amount includes payments to class members for release of their claims, any award of attorneys' fees and costs, the claims administrator's costs, a $4,000 payment to the Labor and Workforce Development Agency pursuant to PAGA, and any incentive award to the named plaintiffs. The Net Settlement Amount will be available for disbursement to the class after these amounts are deducted from the total recovery. *Id.*

The Settlement Agreement provides that the disbursable settlement amount will be allocated to class members based on two factors. First, there is a Regular Rate Payment, whereby "an amount equal or greater than the amount of wages that Defendant might determine through further analysis of payroll data could be owed to each Class Member based on Plaintiffs' regular rate theory shall be calculated." *Id.* at ¶ 59. The Regular Rate Payment is an "all-in" settlement,

1  with direct distribution to all Class Members who do not submit a valid request for exclusion. *Id.*
2  at ¶ 61.  Second, once all Regular Rate Payments are calculated, the remainder of the disbursable
3  settlement amount will be allocated to class members based on their proportional share of pay
4  periods worked during the class period; this is the Pro Rata Payment method. *Id.* at ¶ 60.  The Pro
5  Rata Payment portion of the settlement is "claims made," with claims being made against the Net
6  Settlement Amount following subtraction of the portion of the Net Settlement Amount set aside
7  for the Regular Rate Payment.  *Id.* at ¶ 61.

*Attorneys' Fees and Costs*: The Settlement Agreement authorizes class counsel to apply to the Court for an award of attorneys' fees and costs incurred in litigating this case, not to exceed one-third of the total settlement amount. *Id.* at ¶ 55.

*Incentive Payment*: The Settlement Agreement authorizes the named plaintiffs to seek $5,000 incentive payments (for a total of $25,000) for their participation in this lawsuit. *Id.* at 55.

*Releases*: The Settlement Agreement provides that all class members other than those who opt out shall release Defendant from:

> All claims and causes of action alleged in the Complaint on file in this Action, with the sole exclusion of individual claims made by Plaintiff Julie Dudum (i.e., the Ninth through Eleventh Causes of Action in the Instant Action). The Class Member Released Claims include claims for failure to pay all wages (Labor Code §§ 201, 202, 203, 204, 210, 510 and 1194); failure to provide meal periods or compensation in lieu thereof(Labor Code §§ 226.7 and 512; IWC Wage Order 4-2001); failure to pay split shift differential wages; failure to reimburse business expenses; failure to provide accurate wage statements (Labor Code § 226); penalties pursuant to Labor Code § 558; violation of Business and Professions Code § 17200 (derivative of the Labor Code claims asserted in the Complaint); and penalties pursuant to Labor Code § 2699(f) for violations of Labor Code §§ 201, 202, 203, 204, 210, 226.7, 432, 510, 512, 558, 1194, and 2699(f)(2).

*Id.* at ¶ 10.  The time period for this release is January 27, 2010 through and including January 15, 2015. *Id.*

*Unclaimed Settlement Funds*: The Settlement Agreement provides that unclaimed settlement funds above a fifty percent floor will revert to Defendant. *Id.* at ¶ 61.

## II. DISCUSSION

### A. Motion for Final Approval of Class Action Settlement

#### 1. Legal Standard

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To assess whether a proposed settlement comports with Rule 23(e), a district court must "determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). To make this determination, courts consider the following factors:

> the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* No single factor is the "most significant." *Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1026

#### 2. Adequacy of Notice

Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). Additionally, before granting final approval of a proposed class settlement, a court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(e)(1). While Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each individual actually receive notice. *See Rannis v. Recchia,* 380 F. App'x 646, 650 (9th Cir. 2010) (noting that "due process requires reasonable

4

effort to inform affected class members through individual notice, not receipt of individual notice").

The Court finds that the notice and notice plan, previously approved by the Court, Dkt. Nos. 31, 34, was implemented and complies with Rule 23(c)(2)(B). On March 29, 2016, Defendant provided the Claims' Administrator, Simpluris, Inc., with the Class List, containing data for 463 Class Members, including each member's name, last known address, social security number, and relevant employment information. Dkt. No. 38-3, ¶ 6. Simpluris updated the Class List using the National Change of Address Database, *id.* at ¶ 7, and mailed the Notice Packets to each Class Member, *id.* at ¶ 8. Thirty Class Notices were returned as undeliverable, and Simpluris was able to re-mail 27 of them with new forwarding addresses. *Id.* at 10. Ultimately, Simpluris was unable to find a deliverable address for only 6 of the 463 Class Members. *Id.*

Simpluris received claims from 246 Class Members; only one class member submitted a deficient claim form and failed to cure that deficiency by the deadline. *Id.* at 11. Accordingly, the 245 valid claims represent 52.92% of the Settlement Class. *Id.*

In light of these facts, the Court again finds that the notice and notice procedures complied with the requirements of Rule 23(e).

### 3. Fairness, Adequacy, and Reasonableness of Settlement

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

#### a. Strength of Plaintiffs' Case

The first factor for the Court to consider is the strength of Plaintiffs' case. This action reached settlement before the Court had an opportunity to consider the merits of the claims. Defendant has denied Plaintiffs' allegations, contending that there is no liability to Plaintiffs or Class Members, and arguing that the claims are not suitable for class action treatment. Dkt. No. 35-2, ¶ 47. It is not clear that Plaintiffs successfully would overcome Defendant's opposition to class certification, as well as any motions to dismiss and summary judgment. This factor weighs in favor of approval.

### b. Risk, Expense, Complexity, and Likely Duration of Further Litigation

The Court next considers the risk, expense, complexity, and likely duration associated with pursuing this case through the trial and appellate process.

Especially in light of Defendant's willingness to defend against this action, there would be no guarantee of a favorable result even if the parties were to proceed through protracted litigation. In reaching a settlement, Plaintiffs have ensured a favorable recovery for the class in a litigation which otherwise could have taken years to complete. *See Rodriguez v. W. Publ'g Co.*, 563 F.3d 948, 966 (9th Cir. 2009) (recognizing that difficulties and risks in litigating weigh in favor of approving a class settlement). Moreover, most of the recovery sought is penalties and the Court has discretion to reduce those penalties; thus, even if Plaintiffs were successful at trial, there remains the risk that the Court could reduce Plaintiffs' ultimate recovery.

These factors weigh in favor of approving the settlement. *See Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) ("Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." (internal quotations omitted)).

### c. Risks of Maintaining Class Action Status

In considering the third factor, the Court looks to the risk of maintaining class certification if the litigation were to proceed. As noted above, Defendant comprehensively opposed Plaintiffs' case and indicates that it would oppose a motion to certify the class. The overtime claims in particular would be difficult to certify because of potential individual inquiries regarding whether the employee worked overtime, how much overtime was worked, whether the employee earned a bonus for the same period that overtime was worked, and whether Defendant already paid sufficient overtime wages. Considering the difficulties in certifying and maintaining a class, this factor weighs in favor of approving the settlement.

### d. Amount Offered in Settlement

The amount offered in the settlement is another factor that weighs in favor of approval.

The Net Settlement Amount is estimated to be $273,401.[1] Approximately $62,963.68 is allocated to the minimum payment that all 463 class members will receive. Dkt. No. 38-3, ¶ 12. Approximately $123,726.56 of the Net Settlement Amount is allocated for the 245 Class Members who returned a valid, timely claim form. *Id.* The Claims Administrator estimates a total average recovery for all Class Members of $403.22 and the total highest recovery for any Class Member of $4,994.27. *Id.* Moreover, the Maximum Settlement Amount is seven and half times greater than the maximum aggregate wage underpayment the class allegedly suffered, and the individual amount of potential underpayment is small,[2] *see* Dkt. No. 38-1, ¶¶ 45-46. At the fairness hearing, defense counsel represented that each Class Member will receive an amount at least twice their maximum potential damages suffered, and that Class Members who submitted a claim will receive an additional payment. The parties represent that this additional payment to Class Members who file claims essentially serves as a proxy for potential penalties that could be available in addition to recovery of damages if the class prevailed at trial. The Court finds that this structure, which guarantees that all Class Members receive an award that fully compensates them for substantially more than their maximum damages, is fair and reasonable.

As discussed in the Court's preliminary approval order, the fact that the unclaimed portion of the fund set aside for Class Members who file a claim will revert to the Defendant does not, on these unique facts, change this conclusion. The Court initially denied preliminary approval based, in part, on the presence of this reversion provision, and directed the parties to explain "why any reversion of unclaimed settlement funds to Carter's is appropriate." Dkt. No. 24 at 5. The parties responded that, unlike cases in which reversion may be inappropriate, the reversion here is fair because "each Class Member will recover one hundred percent of the damages he or she has

---

[1] The exact final amount depends on the Court's approval of attorneys' fees and costs, claims' administration expenses, PAGA payments, and incentive awards deducted from the Maximum Settlement Amount. Dkt. No. 38-3 at ¶ 12.

[2] "For example, 8.8% of putative class members (41 of 463) were aggregately underpaid less than one dollar ($1.00) over the five-year exposure period. Over 20% of putative class members (94 of 463) were aggregately underpaid less than five dollars ($5.00). Indeed the median underpayment of all class members calculates out at less than five dollars per year or, approximately nineteen cents (0.19¢) per pay period. Ultimately, fifty percent of the total alleged underpayment was experienced by only 23 employees. This is less than 5% of the putative class for settlement purposes . . . ." Dkt. No. 38-1 at ¶ 45.

7

suffered under Plaintiffs' regular rate theory, irrespective of any potential reversion." Dkt. No. 25-1 at 11. The parties further explained that the reversion is reasonable because (1) the $472,500 settlement amount is seven and a half times greater than the total underpayment allegedly suffered, which is approximately $63,000, (2) after subtracting all fees, costs, and incentive awards, the net settlement amount is [now $273,401], which is still greater than the total underpayment alleged, and (3) the Settlement Agreement requires that a fifty percent minimum of the net settlement amount be distributed to the Class Members, which is again greater than the total underpayment. *Id.* at 11-12. Thus, notwithstanding the reversion provision, under the Regular Rate Payment method, Class Members are guaranteed to receive their unpaid wages. Based on the number of claims submitted, the fifty percent minimum payout will be significantly exceeded. *See* Dkt. No. 38-3 (Declaration of Christina Francisco Regarding Notice and Settlement Administration) at ¶¶ 12 (minimum payments to all Class Members total approximately $62,964, and additional payments to Class Members who filed claims total approximately $123,727, meaning that $186,691, or approximately 68%, of $273,401 Net Settlement Fund is being distributed to Class Members).

The parties also explain that the reversion was a necessary part of the compromise. For Plaintiffs, a driving factor in the case was the potential for penalties. A settlement amount greater than the maximum aggregate underpayment allowed the Class Members to seek penalties by submitting a claim form; at the same time, the amount acknowledges that had the class moved forward with litigation, they may not have received penalties at the statutory maximum. Similarly, the Defendant's willingness to pay an amount greater than the actual underpayment is also a compromise on penalties. Because the reversion only applies to the penalty-proxy amount, and the Class Members who do not opt out are guaranteed more than the maximum wages they were underpaid, the Court finds that the reversionary provision does not render the Settlement Agreement inherently inadequate.

On these unique facts, including the limitation of the reversion clause to the penalty-proxy portion of the Net Settlement Fund, the substantial risk that penalties would not be awarded at the maximum level even if the class were to prevail at trial, the compensation of every Class Member

in an amount well in excess of actual maximum damages, and the Parties' collaboration with an experienced mediator to reach the compromise reflected in the Settlement Agreement, the Court finds the settlement is reasonable, notwithstanding its view that reversionary clauses are generally disfavored and must be scrutinized closely.

### e. Extent of Discovery Completed and State of Proceedings

The parties have undertaken sufficient discovery and investigation of the facts to inform their view of the settlement's reasonableness. As a part of initial disclosures and in response to six separate sets of written discovery, Defendant produced copies of relevant employee handbooks and policies, wage statements, and data and documents related to the size of the proposed class and the value of the damages alleged. Dkt. No. 38-1 at ¶¶ 14, 32. Defendant further produced over 2,000 pages of records relating to their payroll practices, time keeping practices, and compliance with applicable Labor Code provisions relating to, among other issues, payroll data, hours worked, and mileage reimbursement. *Id.* at ¶¶ 14, 34. This included personnel files, employee time sheets, employee payroll records, and employee handbook/policy manuals. *Id.* Once Plaintiffs decided to focus on Defendant's alleged failure to include bonuses in the regular rate calculation, Plaintiffs sought and received additional discovery related to the variety of bonuses, contests, and incentive programs that applied to the putative class. *Id.* at ¶¶ 35-36. Using the substantial discovery exchanged, Plaintiffs and their counsel prepared a detailed analysis of alleged damages. *Id.*

The Court finds that the extent of discovery completed and the stage of the proceedings weigh strongly in favor of final approval.

### f. Experience and Views of Counsel

The Court next considers the experience and views of counsel, and finds that the factor tilts in favor of approval. "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (internal quotation marks omitted). Accordingly, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). In addition to being

familiar with the present dispute, class counsel has extensive experience prosecuting and settling class actions, with specific expertise in employment matters and the violations of state and federal wage laws. Dkt. No. 38-1, ¶ 2; Dkt. No. 38-2, ¶¶ 2-3.

Class counsel believes "the Settlement is fair, reasonable, and adequate, and is in the best interests of the class." Dkt. No. 38-1, ¶ 4. The Court notes that there are divergent views as to the weight to accord counsel's opinions. *Compare Carter v. Anderson Merch., LP*, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight."), *with Chun-Hoon*, 716 F. Supp. 2d at 852 ("[T]his court is reluctant to put much stock in counsel's pronouncements, as parties to class actions and their counsel often have pecuniary interests in seeing the settlement approved."). Accordingly, although the Court finds that this factor weighs in favor of approval, the Court affords only modest weight to counsels' views.

### g. Government Participation

No governmental entity participated in this matter; this factor, therefore, is irrelevant to the court's analysis.

### h. Reaction of Class Members

The reaction of the class members supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

The Notice, which was served on each Class Member in accordance with the methods approved by the Court, advised the Class of the requirements regarding objections and exclusions. As discussed, 245 valid and timely claims were submitted by Class Members, representing 52.92% of the total Class Members. Dkt. No. 38-3, ¶ 11. As of June 6, 2016, Simpluris had not received any requests for exclusion or objections to the Settlement, Dkt. No. 38-3, ¶¶ 13-14. The Court finds that the absence of objections and exclusions indicates overwhelming support among the Class Members, constitutes a positive reaction, and weighs in favor of approval. *See*, *e.g.*,

1   *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement were
2   45 of approximately 90,000 class members objected); *Rodriguez v. West Publ. Corp.*, Case No.
3   CV05–3222 R, 2007 WL 2827379, at *10 (C.D. Cal. Sept. 10, 2007) (finding favorable class
4   reaction where 54 of 376,301 class members objected).

### i.     Arms-Length Negotiations

Finally, the Court considers whether the parties reached this settlement as a result of good faith, arms-length negotiations rather than as a result of fraud or collusion.  The parties engaged in negotiations with the participation of a mediator, over the course of about three months, before finally coming to an agreement.  Considering the extent of discovery and investigation leading up to the mediation, the nature and length of the negotiations process as well as the benefit conveyed to the class members in light of the risks of continued litigation, the Court is satisfied that this settlement is not the product of collusion or fraud, but rather is the result of a successful arms-length negotiation.

*        *        *

After considering and weighing all of the above factors, the Court finds that the Settlement Agreement is fair, adequate, and reasonable, and that the settlement class members received adequate notice.  Accordingly, Plaintiffs' motion for final approval of class action settlement is GRANTED.

### B.     Attorneys' Fees and Costs

#### 1.   The Law

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h). Additionally, class counsel is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client."  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks omitted).  Because California law governed the claim here, it also governs the award of attorneys' fees.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  Nevertheless, the Court may still look to federal authority for guidance in awarding attorneys' fees.  *See Apple Computer, Inc. v. Superior Court*,

126 Cal. App. 4th 1253, 1264 n.4 (2005) ("California courts may look to federal authority for guidance on matters involving class action procedures.").

"Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." *Vizcaino*, 290 F.3d at 1047. "[T]he choice between lodestar and percentage calculation depends on the circumstances, but [ ] 'either method may . . . have its place in determining what would be reasonable compensation for creating a common fund.'" *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). To guard against an unreasonable result, the Ninth Circuit has encouraged district courts to cross-check any calculations done in one method against those of another method. *Vizcaino*, 290 F.3d at 1050-51. "The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six Mexican Workers*, 904 F.2d at 1311.

Under the percentage-of-recovery method, 25% of a common fund is the benchmark award of attorney's fees. *See*, *e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); *Six Mexican Workers*, 904 F.2d at 1311.

Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941 (*citing Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)). Whether the Court awards the benchmark amount or some other rate, the award must be supported "by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The Ninth Circuit has approved factors that may be relevant to Court's determination: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *See id.* at 1048-1050.

### 2. Reasonableness of Attorneys' Fees Request

Here, the parties have agreed to a Maximum Settlement Amount of $472,500, of which counsel requests 31.84% in fees. Dkt. No. 60 at 3. Although the requested amount is above the 25% benchmark, the Court finds the request reasonable based on the lodestar.

As an initial matter, the Court finds it appropriate for purposes of evaluating the reasonableness of the percentage requested in fees to subtract the $86,710 that is not being paid to Class Members as a result of the reversion clause. The fact that Defendant was willing to pay money that it will not now actually have to pay to Class Members should not inure to the benefit of Class Counsel in the fee calculation. Subtracting this amount, the adjusted true "Gross Settlement Amount" for purposes of this analysis is reduced to $385,790. Class Counsel requests $150,488 in fees, Dkt. No. 35-1 at ¶ 30. This amounts to 39% of the adjusted true Gross Settlement Amount. Because this percentage far exceeds the 25% benchmark, absent compelling lodestar information the Court would view this request with significant skepticism.

Here, the lodestar information presented by Class Counsel is compelling, and persuades the Court that the requested fees are reasonable notwithstanding the high percentage they represent once the reversion provision is taken into account. The total lodestar of $172,500 is based on 335.1 hours worked, not including the additional hours spent attending the Final Fairness Hearing and administering the settlement. *See* Dkt. No. 35-1, ¶¶ 22-30. The requested fee of $150,488 results in a multiplier of .87, below Class Counsel's actual hours billed to date. *Id.* This unusual negative multiplier supports the reasonableness of the fee request. *See McKenzie v. Fed. Exp. Corp.*, No. CV 10-02420 GAF PLAX, 2012 WL 2930201, at *10 (C.D. Cal. July 2, 2012) (lodestar with multipliers in the range of 2 to 4 was reasonable); *Perkins v. Linkedin Corp.*, No. 13-CV-04303-LHK, 2016 WL 613255, at *15 (N.D. Cal. Feb. 16, 2016) (lodestar of 1.45 was reasonable).

In addition, the *Vizcaino* factors confirm the overall reasonableness of the award. First, as discussed above, the results obtained were very favorable. All Class Members will receive a payout that will substantially exceed actual damages suffered. This factor -- the provision of guaranteed compensation significantly in excess of each Class Member's maximum damages,

coupled with each Class Member's opportunity to receive additional payment by filing a claim -- weighs most heavily in the Court's assessment. Moreover, not a single class member objected to the settlement amount or requested exclusion from the settlement, suggesting strong support for the settlement's outcome.

Second, as discussed, the risks of litigation were substantial. Defendant contested liability and intended to contest class certification. Counsel represented Plaintiffs on a "contingency basis with the real risk that Plaintiffs' counsel would receive no compensation" if class certification failed or if Defendant's liability was not established at trial. Dkt. No. 35-1, ¶¶ 19, 21.

Third, with respect to the quality of litigation, Class Counsel is experienced in litigating large consumer class actions concerning employment matters and wage and hour cases. The successful result involved significant commitment of effort and skill. In particular, counsel performed significant factual investigation to determine the scope of the class (those employees who both received bonus payments and worked overtime hours during the same period); to assess the type of bonus compensation received and whether it qualified for inclusion in the regular rate; and to correlate the various types of bonus compensation awarded on a weekly, biweekly, and monthly basis with when it was received to assess the proportion of the monthly bonus to be allocated to each payroll period. Dkt. No. 38-1, ¶¶ 39-41. The attorneys spent many hours determining the alleged exposure and calculating potential settlement payments for the Class's benefit.

Fourth, the contingent nature of the case and the financial burden assumed further justify a departure from the benchmark. Counsel was, to an extent, precluded from taking and devoting resources to other cases or potential cases, with no guarantee that the time expended would result in any recovery or recoupment of costs. Dkt. No. 35-1, ¶ 19.

Finally, the Court considers whether the fee request is consistent with attorneys' fees awards made in similar cases, and concludes that it is. *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010); *Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010).

Accordingly, the Court finds that the requested fee award is reasonable and GRANTS the

request.

          **3.**      **Class Counsel's Requests for Costs**

Class Counsel seeks reimbursement of $7,012 in expenses. Dkt. No. 103 at 20. Having reviewed the submitted records, including the itemized lists of expenditures incurred throughout litigation, the Court finds that the costs were reasonable and awards Class Counsel the requested amount.

      **C.**      **Incentive Awards**

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977. The Court must evaluate the incentive award using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *Id.* at 977. Many courts in the Ninth Circuit have held that a $5,000 incentive award is "presumptively reasonable." *See*, *e.g.*, *In re Toys-R-Us Delaware, Inc. FACTA Litig.*, 295 F.R.D. 438, 470–72 (C.D. Cal. 2014); *Harris v. Vector Marketing Corp.*, No. 08-cv-5198-EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) ("Several courts in this District have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount.").

Plaintiffs request a service award of $5,000 for each of the five named representatives. Dkt. No. 38. Named Plaintiffs Dudum, Garcia, Ludovico, Powell, and Gutierrez each submitted declarations reflecting their active engagement in litigation. *See* Dkt. No. 38-5 (Dudum), Dkt. No. 38-5 (Garcia), Dkt. No. 38-6 (Ludovico), Dkt. No. 38-7 (Powell), Dkt. No. 40 (Gutierrez). Having reviewed the submitted declarations, the Court finds that the named plaintiffs were actively engaged in the investigation leading up to the filing of the case, the litigation after the complaint was filed, and the ultimate resolution of the case. In light of their participation and commitment to the litigation, their willingness to subject themselves to public attention, and their service to the class, the Court finds that the incentive award requested is fair and reasonable.

**III.   CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiffs' Motion for Final Approval of

1  Class Action Settlement and Plaintiffs' Motion for Attorneys' Fees and Costs.  The Court
2  approves payment of attorneys' fees in the amount of $150,488, costs in the amount of $7,012,
3  estimated settlement administration costs of $13,599 (with reasonable costs of administration to be
4  finally determined after the completion of administration), service awards in the amount of $5,000
5  for each named plaintiff, and payment of $4,000 to cover penalties under the Private Attorney
6  General Act ("PAGA").  The Parties and Settlement Administrator are directed to implement this
7  Final Order and the Settlement Agreement in accordance with the terms of the Settlement
8  Agreement, including the provisions governing distribution of the Net Settlement Fund.

The Court grants final certification of the class, and confirms the appointment of John McIntyre of Shea & McIntyre, A.P.C. and Cary Kletter of Kletter + Nguyen Law, LLP as co-lead counsel.

The Court directs the Clerk of the Court to enter Final Judgment consistent with this order, and to close the case.  The Court retains jurisdiction over the parties to enforce the terms of the judgment.

**IT IS SO ORDERED.**

Dated: 12/2/2016

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California